UNITED STATES DISTRICT COURT
EASTERN DISTRICT NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | Civil Action No. |
| | : | CV-09-4209 |
| Plaintiff, | : | |
| | : | (Seybert, J.) |
| v. | : | (Boyle, M.J.) |
| | : | |
| | : | |
| 110 SAND COMPANY, C.BROMAN | : | |
| TRANSPORTATION CORP., | : | |
| FARMINGDALE SAND CORP., | : | |
| and BROAD HOLLOW | : | |
| ESTATES, INC., | : | |
| | : | |
| Defendants. | : | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## CONSENT JUDGMENT

WHEREAS, Plaintiff, the United States of America ("the United States" or "the Plaintiff"), on behalf of the United States Environmental Protection Agency ("EPA"), has filed a Complaint for injunctive relief and civil penalties pursuant to Sections 113(b) and 167 of the Clean Air Act ("the Act"), 42 U.S.C. §§ 7413(b) and 7477, alleging that the Defendants, 110 Sand Company, C. Broman Transportation Corp., Farmingdale Sand Corp, and Broad Hollow Estates, Inc. (collectively, "the Defendants"), have constructed a major stationary source of hydrogen sulfide ("$H_2S$") and sulfur dioxide ("$SO_2$") emissions, to wit landfill cells and a landfill gas collection system and landfill gas flare, at their Clean Fill landfill ("Facility") located on Bethpage-Spagnoli Road in Melville, Town of Huntington, New York, in the New Jersey-New York-Connecticut Interstate Air Quality Control Region ("AQCR"), in violation of Part C of Subchapter I, Sections 160-169B of the Act, 42 U.S.C. §§ 7470-7492, and 40 C.F.R. § 52.21, promulgated pursuant to Sections 160-169B of the Act, (collectively "prevention of significant

1

deterioration program" or "PSD program") and pursuant to Section 114 of the Act, 42 U.S.C. § 7414, and that Defendants have caused exceedances of the National Ambient Air Quality Standards ("NAAQS") for $SO_2$, promulgated pursuant to Section 109 of the Act, 42 U.S.C. § 7409; and

WHEREAS, the Defendants dispute the aforesaid allegations and further contend that construction of the landfill gas collection system and flare occurred pursuant to permits issued by the New York State Department of Environmental Conservation ("NYSDEC") during a period in which the State of New York administered and enforced the PSD program under authority delegated by EPA under the Act; and,

WHEREAS, the Complaint alleges claims upon which relief can be granted against the Defendants under Sections 113 and 167 of the Act, 42 U.S.C. §§ 7413 and 7477; and

WHEREAS, the United States provided the Defendants with actual notice of alleged PSD program violations in accordance with Section 113(a)(1) of the Act, 42 U.S.C. § 7413(a)(1); and

WHEREAS, the Defendants have installed, have continuously operated since June 2009, and will continue to operate Best Available Control Technology-like ("BACT-like") equivalent technologies at the 110 Sand facility; and

WHEREAS pursuant to a State Facility Permit issued to Defendants 110 Sand Company and Broad Hollow Estates, Inc. in 2010 governing the operation of a sulfur removal air pollution control system, the Facility is now operated at non-major stationary source emission levels; and

WHEREAS, the Defendants represent that they maintained an $H_2S$ monitoring program for many years that relied upon daily inspections of the areas of the Facility considered most likely to be the sites of $H_2S$ releases as based on the operator's experience; and

WHEREAS, the Defendants voluntarily installed, use and will continue to use automated ambient $H_2S$ monitors along the fence line of the Property (as defined herein) at locations chosen pursuant to an ambient monitoring plan established by Defendant 110 Sand Company's consulting engineer, and obtain and analyze data collected by the automated $H_2S$ monitors; and

WHEREAS, the Defendants neither admit nor deny the violations alleged in the Complaint; and

WHEREAS, nothing herein shall constitute an admission of liability; and

WHEREAS, the Parties have agreed that settlement of this action is in the best interest of the Parties and in the public interest, and that entry of this Consent Judgment without further litigation is the most appropriate means of resolving this matter; and

WHEREAS, the Parties recognize, and the Court by entering this Consent Judgment finds, that this Consent Judgment has been negotiated in good faith and at arm's length and that this Consent Judgment is fair, reasonable, and consistent with the goals of the Act, and in the public interest; and

WHEREAS, the Parties have consented to entry of this Consent Judgment without trial of any issues;

NOW, THEREFORE, without any admission of fact or law, it is hereby ORDERED, ADJUDGED, AND DECREED as follows:

3

## I.      JURISDICTION AND VENUE

1.      This Court has jurisdiction over this action, the subject matter herein, and the Parties consent hereto, pursuant to 28 U.S.C. §§ 1331, 1345, 1355, and 1367, and pursuant to Sections 113 and 167 of the Act, 42 U.S.C. §§ 7413 and 7477.  Venue is proper in this District under Section 113(b) of the Act, 42 U.S.C. § 7413(b), and under 28 U.S.C. § 1391(b) and (c) because the Defendants are located and conduct business in this judicial district.  Solely for the purposes of this Consent Judgment, or any action to enforce this Consent Judgment and the underlying Complaint, the Defendants waive all objections and defenses that they may have to the Court's jurisdiction over this action, to the Court's jurisdiction over the Defendants, and to venue in this District.  The Defendants shall not challenge the terms of this Consent Judgment or this Court's jurisdiction to enter and enforce this Consent Judgment.  For purposes of the Complaint filed by the Plaintiff in this matter and resolved by this Consent Judgment, and for purposes of entry and enforcement of this Consent Judgment, the Defendants waive any defense or objection based on standing.  Except as expressly provided for herein, this Consent Judgment shall not create any rights in any party other than the Parties to this Consent Judgment.  Except as provided in Section XX (Public Participation) of this Consent Judgment, the Parties consent to entry of this Consent Judgment without further notice.

## II.      APPLICABILITY

2.      The obligations of this Consent Judgment shall, upon entry, apply to and be binding upon the United States and upon Defendants and their successors and assigns, and upon the Defendants' officers, employees, and agents or other entities or persons whose duties might include compliance with any provision of this Consent Judgment.

3.      The Defendants shall provide a copy of this Consent Judgment to all officers, employees, and agents whose duties might reasonably include compliance with any provision of this Consent Judgment, as well as to all vendors, suppliers, consultants, contractors, agents, and any other company or organization retained to perform any of the work required by this Consent Judgment. The Defendants shall condition any such contract upon performance of the work in conformity with the terms of this Consent Judgment.   Notwithstanding any retention of contractors, subcontractors, or agents to perform any work required under this Consent Judgment, the Defendants shall be responsible for ensuring that all work is performed in accordance with the requirements of this Consent Judgment. In any action to enforce this Consent Judgment, the Defendants shall not assert as a defense the failure of their officers, directors, employees, servants, agents, or contractors to take actions necessary to comply with this Consent Judgment.

## III.   DEFINITIONS

4.      Terms used in this Consent Judgment that are defined in Sections 160-169B of the Act, 42 U.S.C. §§ 7470-7492, or in 40 C.F.R. § 52.21 shall have the meanings assigned to them in the Act or such regulations, unless otherwise provided in this Consent Judgment.   Whenever the terms set forth below are used in this Consent Judgment, the following definitions shall apply:

a.      "Administrator" shall mean the Administrator of the EPA.

b.      "Clean Fill" shall mean waste authorized for disposal at the Facility by the permit issued by New York State to 110 Sand Company pursuant to 6 N.Y.C.R.R. Part 360, with an effective date of September 14, 2005, (NYSDEC Permit Number 1-4726-00490/00003-0).  Clean Fill refers specifically to material defined in 6 N.Y.C.R.R. 360-8.2(a)(1), which includes construction and demolition debris as defined in 6 N.Y.C.R.R. 360-1.2(b)(38), as well as other material that is authorized for disposal at the Facility by the NYSDEC.

5

c.   "Complaint" shall mean the complaint filed by the United States in this action.

d.   "Consent Judgment" shall mean this consent judgment and all appendices attached hereto.

e.   "Date of Lodging" shall mean the date this Consent Judgment is lodged with the Court.

f.   "Day" shall mean a calendar day unless expressly stated to be a working day.  In computing any period of time under this Consent Judgment, where the last day would fall on a Saturday, Sunday or federal holiday, the period shall continue until the close of business on the next working day.

g.   "Defendants" shall mean 110 Sand Company, lessee and operator of the 110 Sand Clean Fill Disposal Site, C. Broman Transportation Corp, and Farmingdale Sand Corp., general partners of 110 Sand Company, and Broad Hollow Estates, Inc., owner of the Property and lessor to 110 Sand Company.

h.   "Effective Date" shall mean the date the Consent Judgment is entered by the Court, or a motion to enter the Consent Judgment is granted, whichever occurs first, as recorded on the Court's docket.

i.   "EPA" shall mean the United States Environmental Protection Agency and any of its successor departments or agencies.

j.    "Facility" shall mean the 110 Sand Company Clean Fill Disposal Site located in Suffolk County at 136 Bethpage-Spagnoli Road, Melville, New York, 11747 and all equipment used in operation of the Facility.

k.   "Flare" shall mean the enclosed flare located at the Facility that combusts landfill gas or any other enclosed oxidative system approved by EPA for use at the Facility.

6

l.   "Insufficient Negative Pressure" shall mean $H_2S$ gas escaping to the atmosphere from the gas collection and control system (GCCS) or landfill surface such that the Jerome Meters installed at the landfill's fence line record concentrations of $H_2S$ above 0.10 ppm.

m. "Jerome Meters" shall mean Jerome $H_2S$ detectors, which monitor ambient concentrations of $H_2S$ gas.

n.   "Major Stationary Source" shall mean, *inter alia*, any stationary source which emits, or has the potential to emit, 250 tons per year or more of a regulated new source review ("NSR") pollutant.

o.   "Paragraph" shall mean a portion of this Consent Judgment identified by an arabic numeral.

p.   "Parties" shall mean the United States and the Defendants.

q.   "Property" shall mean the property that Broad Hollow Estates, Inc. represents it owns, and leases to 110 Sand Company, and that is set forth in Survey Number 9052-DES-1111, prepared by Fauser Associates for West Hills Silica Sand Mining Corp., and annexed hereto as Appendix C.  This includes the area in which the Thiopaq and the Flare are located.

r.   "Section" shall mean a portion of this Consent Judgment identified by a Roman numeral, unless it refers to a statutory or regulatory section.

s.   "Sufficient Negative Pressure" shall mean $H_2S$ gas escaping the GCCS or landfill surface such that the Jerome meters do not record concentrations of $H_2S$ above  0.10 ppm.

t.   "Thiopaq" or "Sulfur Removal System" shall mean either the Paques Desulfurization Unit, distributed by NATCO, commonly referred to as the "Thiopaq System," which is an equipment package that treats landfill gas generated by the landfill, or any equipment package, including but not limited to an absorber, reactor, and sulfur handling system.

7

u.  "Transfer" shall mean each sale, assignment, or any other method of transfer of any ownership or operations interest or any leasehold interest by a Defendant or its successors or assigns of the Property, or any portion thereof, or of the entity, or any interest therein, which owns, leases or operates the Property and/or the Facility, where title or rights to the lease to the Property and/or the Facility or any portion or interest thereof (or the entity owning the Property and/or the Facility): (i) is transferred in exchange for consideration, or (ii) is transferred involuntarily by operation of law, including foreclosure and its equivalents following default on the indebtedness secured, in whole or in part, by the Property and/or the Facility, including, but not limited to, a deed or other assignment in lieu of foreclosure. However, a sale of a minority interest in the shares of stock or partnership interest shall not constitute a Transfer unless the party or parties holding the minority interest exercises its right to force a sale or reorganization of a Defendant. If the party or parties holding the minority interest exercise its right to force a sale or reorganization of a Defendant, such exercise shall constitute a Transfer in accordance with the provisions of this Consent Judgment. A transaction in which shares of Defendant Broad Hollow Estates, Inc. are pledged as collateral to secure a monetary obligation shall not constitute a Transfer unless the party or parties holding the collateral exercises its right to take ownership of Broad Hollow Estates, Inc. If the party or parties holding the collateral exercises its right to take ownership of Broad Hollow Estates, Inc., such exercise shall constitute a Transfer in accordance with the provisions of this Consent Judgment.  The term Transfer specifically excludes the renewal of any existing lease for a portion of the Property that is not involved in the receipt or disposal of Clean Fill, and is not otherwise related to landfill operations including those portions of the Property upon which the Flare, the Thiopaq, any portion of the GCCS, and any air monitoring systems are located.

v.  "United States" shall mean the United States of America, acting on behalf of EPA.

## IV.  COMPLIANCE REQUIREMENTS

5.      State Facility Permit.  New York State Facility Permit ID: 1-4726-00490/00011 ("State Facility Permit"), which is attached to this Consent Judgment as Appendix A, is incorporated as a term of this Consent Judgment in its entirety.  Each of the Federally Enforceable Conditions and the Federally Enforceable Requirements of the State Facility Permit, which are set forth on pages 3 to 14 of the State Facility Permit (Items A through N and Conditions 1 through 10), shall be separately enforceable by EPA during the term of this Consent Judgment.

6.      Jerome Meters.  During the term of this Consent Judgment, Defendants shall continue to operate and maintain the six Jerome Meters currently in operation at the Property. Notwithstanding any other provision of this Consent Judgment, the data generated by the Jerome Meters shall not constitute the basis of a claim of a violation of this Consent Judgment.

7.      Negative Pressure in Cells.  Active landfill cells and closed landfill cells that are generating sufficient landfill gas to require capture and treatment will be maintained under Sufficient Negative Pressure.  In the event an episode of Insufficient Negative Pressure continues for 15 continuous days, 110 Sand shall notify EPA within (5) days thereafter.  The notice to EPA shall describe 110 Sand's selected method to restore Sufficient Negative Pressure.  The selected method shall be designed and implemented to restore Sufficient Negative Pressure within (100) days after the deadline for the notice.  EPA may approve a longer deadline to restore Sufficient Negative Pressure if 110 Sand demonstrates to EPA's satisfaction that the Jerome Meters are falsely indicating that there is Insufficient Negative Pressure.  For the purpose of Paragraph 26 hereof, a period of noncompliance shall commence at the beginning of the 16th day of Insufficient Negative Pressure.

## V.       REPORTING REQUIREMENTS

8.       Defendants shall provide to EPA a copy of each report and other document required to be submitted to the NYSDEC by the State Facility Permit in the same format and at the same time that such report or other document is required to be provided to NYSDEC.

9.       Defendants shall provide to EPA quarterly submittals of data generated by the Jerome Meters.

10.       All reports or other documents required to be submitted pursuant to this Consent Judgment shall be submitted to the United States as specified, at the addresses set forth in Section XIII (Notices, Submittals and Demands) of this Consent Judgment.

11.       Each report or other document required by the Consent Judgment to be submitted by the Defendants shall be signed by the Defendants' environmental Manager or, in his or her absence, the Defendants' Facility Manager, or higher ranking official, and shall contain the following certification:

> I certify under penalty of law that I have examined and am familiar with the information submitted in this document and all attachments and that this document and its attachments were prepared either by me personally or under my direction or supervision in a manner designed to ensure that qualified and knowledgeable personnel properly gather and present the information contained therein.  I further certify, based on my personal knowledge or on my inquiry of those individuals immediately responsible for obtaining the information, that the information is true, accurate and complete.  I am aware that there are significant penalties for submitting false information, including the possibility of fines and imprisonment for knowingly and willfully submitting a materially false statement.

This certification requirement does not apply to emergency notifications where compliance would be impractical.

12.     The reporting requirements of this Consent Judgment do not relieve the Defendants of any reporting obligations required by the Clean Air Act or implementing regulations, or by any other federal, state, or local law, regulation, permit, or other requirement.

13.     Except as otherwise provided herein, any information provided pursuant to this Consent Judgment may be used by the United States in any proceeding to enforce the provisions of this Consent Judgment and as otherwise permitted by law.

14.     The reports, documents and certifications required by this Section shall be submitted by hand, by post, by facsimile, by overnight mail, by electronic mail, or by certified mail, return receipt requested. If the report, document and/or certification indicates noncompliance with the Consent Judgment, then the report, document and/or certification shall be submitted to the United States and the State by hand or overnight mail.

15.     The Defendants shall maintain legible copies of documentation relied upon in preparation of or which form the basis of the reports and certifications required by this Section in accordance with the terms of the State Facility Permit.  Nothing herein shall alter the obligations of the Defendants to maintain documents in accordance with the State Facility Permit.

## VI.     TRANSFER

16.     Subject to the conditions and limitations set forth below in Paragraphs 17 and 18, prior to Defendants entering into any transaction to Transfer ownership or operation of any portion of the Facility or all or part of their ownership interest in any of their Property or operations subject to this Consent Judgment ("Ownership Interest"), Defendants must:

a.     At least 60 days prior to such Transfer, provide a copy of this Consent Judgment to the proposed transferee;

11

      b.      At least 60 days prior to such Transfer, provide written notice of the prospective Transfer, together with a copy of the proposed written transfer agreement, to EPA Region 2 and the United States Attorney for the Eastern District of New York, in accordance with Section XIII (Notices, Submittals and Demands) of this Consent Judgment; and

      c.      Obtain an agreement from the transferee, enforceable by both the Defendants and the United States, and in accordance with Section XVIII (Modifications), that the transferee will undertake the obligations required under this Consent Judgment regarding the property to be transferred;

17.    No later than 5 days after the completion of such Transfer in compliance with the above terms, Defendants shall provide an executed copy of the written agreement to the United States, in accordance with Section XIII (Notices, Submittals and Demands) of this Consent Judgment.

18.    Defendants may not assign, and may not be released from the obligations set forth in Section VII (Civil Penalty) of this Consent Judgment.

19.    If the Defendant Broad Hollow Estates, Inc., or its successor(s), Transfers, to a transferee, portions of land on the Property ("Land") that have never received and will not receive Clean Fill, as defined in this Consent Judgment, and are not Land where the Thiopaq and/or Flare are located, the transferee shall not be bound by this Consent Judgment provided that it does not receive Clean Fill and all of the following conditions are met: (1) the Defendants provide to the United States documentation certifying that the Land has never received Clean Fill; (2) the Defendants provide a copy of this Consent Judgment and provide notice as required by Paragraph 16; (3) the Transfer agreement provides that the transferee shall not use the Land for disposal of Clean Fill, and that if the Land receives Clean Fill at any time prior to termination of this Consent Judgment, that the transferee and its successor(s) shall be bound by this Consent

Judgment; and (4) the Defendants notify the State of the Transfer.  EPA shall have the right to inspect the Land prior to the Transfer or sale to confirm that the Land has never received Clean Fill. In the event that EPA believes that the Land has received Clean Fill, EPA shall provide written notification to the Defendants and the transferee of the dispute and the dispute shall be resolved in accordance with Section X (Dispute Resolution) of this Consent Judgment.

20.     This Consent Judgment shall not be construed to impede the Transfer of any Ownership Interests between the Defendants and any transferee or to prohibit a contractual allocation - as between the Defendants and any transferee - of the obligations of compliance with this Consent Judgment.

21.     Any attempt to Transfer ownership or operation of any portion of the Facility or Property without complying with Paragraphs 16-19 constitutes a violation of this Consent Judgment.

## VII.    CIVIL PENALTY

22.     Not later than 30 days after the Effective Date, the Defendants shall pay the sum of one hundred and fifty thousand dollars (US $150,000) as a civil penalty.  Failure to pay the civil penalty required herein within the time period specified above shall subject the Defendants to interest accruing from the date payment is due until the date payment is made at the rate specified in 28 U.S.C. § 1961 as of the date of lodging of this Consent Judgment.  Payment shall be made by FedWire Electronic Funds Transfer ("EFT") to the United States Department of Justice, in accordance with instructions to be provided by the Financial Litigation Unit of the United States Attorney's Office after the Effective Date.  The EFT instructions shall be provided to: Mr. Douglas Picozzi, 110 Sand Company, 170 Cabot Street, West Babylon, New York 11704, tel: (631) 249-4108, ext. 20, fax: (631) 249-4126.  At the time of payment, the Defendants shall send written notice of payment and a copy of any transmittal documentation

which should reference USAO File Number 2006VO1356 and the civil action case name, United States v. 110 Sand Company, and Broad Hollow Estates, Inc., and case number of this action, to the United States in accordance with Section XIII (Notices, Submittals and Demands) of this Consent Judgment. Any funds received after 2:00 p.m. EDT shall be credited on the next business day.

23.     Payments made pursuant to this Section are penalties within the meaning of Section 162(f) of the Internal Revenue Code, 26 U.S.C. § 162(f), and are not tax-deductible expenditures for purposes of federal law.

### VIII.   STIPULATED PENALTIES

24.     The Defendants shall be liable for stipulated penalties to the United States for violations of this Consent Judgment as specified below, unless excused under Section IX (Force Majeure) of this Consent Judgment. A violation includes failing to perform any obligation required by the terms of this Consent Judgment, according to the applicable requirements of this Consent Judgment and within the specified time schedules established by or approved under this Consent Judgment.

25.     If Defendants fail to pay the civil penalty required to be paid under Section VII (Civil Penalty) of this Consent Judgment when due, Defendants shall pay a stipulated penalty of $500 per day for each day that the payment is late.

26.     If Defendants fail to meet any requirement of Section IV (Compliance), Paragraph 5 (State Facility Permit), Paragraph 7 (Negative Pressure in Cells), or Section VI (Transfer), Defendants shall pay a stipulated penalty as follows, for each violation for each day of violation:

| Penalty Per Violation Per Day | Period of Noncompliance |
|---|---|
| $500 | 1st to 30th day |
| $1000 | 31st to 60th day |

14

| | |
|---|---|
| $1500 | 61st to 90th days |
| $2000 | After 90 days |

27.     If Defendants fail to submit any reports or documents required by Section V (Reporting Requirements) of this Consent Judgment, Defendants shall pay a stipulated penalty of $500 per day for each day that the required report or document is not submitted.

28.     The United States may, in the unreviewable exercise of its discretion, reduce or waive Stipulated Penalties otherwise due under this Consent Judgment.

29.     All stipulated penalties shall begin to accrue on the day after the performance is due or on the day a violation occurs, whichever is applicable, and shall continue to accrue until performance is satisfactorily completed or until the violation ceases.  Stipulated penalties shall accrue simultaneously for separate violations of this Consent Judgment.

30.     The Defendants shall pay all stipulated penalties to the Plaintiff within thirty (30) days of receipt of a written demand to the Defendants from the United States, and shall continue to make such payments every thirty (30) days thereafter until the violation(s) no longer continues, except as provided in Paragraph 31 below.

31.     If Defendants elect, within twenty (20) days of receipt of a written demand to the Defendants from the United States, to dispute the accrual of stipulated penalties in accordance with the provisions in Section X (Dispute Resolution) of this Consent Judgment, stipulated penalties shall continue to accrue as provided above and in Section X (Dispute Resolution) of this Consent Judgment during the pendency of any such dispute, with interest on accrued stipulated penalties payable and calculated at the rate established by the Secretary of the Treasury, pursuant to 28 U.S.C. § 1961, but payment of such stipulated penalties need not be made until the following:

a.      If the dispute is resolved by agreement, or by a decision of the Plaintiff pursuant to Section X (Dispute Resolution) of this Consent Judgment, that is not appealed to the Court, accrued stipulated penalties agreed or determined to be owing, together with accrued interest, shall be paid within thirty (30) days of the effective date of the agreement or of the receipt of the Plaintiff's decision;

b.      If the dispute is appealed to the Court and the Plaintiff  prevails in whole or in part, the Defendants shall, within thirty (30) days of receipt of the Court's decision or order, pay all accrued stipulated penalties determined by the Court to be owing, together with accrued interest, except as provided in subparagraph (c) below;

c.      If the Court's decision is appealed by any Party, the Defendants shall, within fifteen (15) days of receipt of the final appellate court decision, pay all accrued stipulated penalties determined to be owed, together with accrued interest. The Defendants need not pay any stipulated penalties for violations that they dispute and ultimately prevail under Section X (Dispute Resolution) of this Consent Judgment.

32.    All stipulated penalties shall be paid in the manner set forth in Section VII (Civil Penalty) of this Consent Judgment.

33.    The Defendants shall not deduct Stipulated Penalties paid under this Section in calculating federal income tax.

34.    Should the Defendants fail to pay stipulated penalties in compliance with the terms of this Consent Judgment, the Defendants shall be liable for interest on such penalties, as provided for in 28 U.S.C. § 1961, accruing as of the date payment became due.

35.    The stipulated penalties provided for in this Consent Judgment shall be in addition to any other rights, remedies, or sanctions available to the Plaintiff by reason of the Defendants' failure

16

to comply with any requirement of this Consent Judgment or applicable law, except that for any violation of the Act for which this Consent Judgment provides for payment of a stipulated penalty, the Defendants shall be allowed a credit for stipulated penalties paid against any statutory penalties also imposed for such violation.  The United States may seek equitable relief, in addition to Stipulated Penalties, to enforce the requirements of this Consent Judgment.

## IX.   FORCE MAJEURE

36.    For purposes of this Consent Judgment, a "Force Majeure Event" shall mean any event beyond the control of the Defendants, their contractors, or any entity controlled by the Defendants that delays the performance of any obligation under this Consent Judgment or otherwise causes a violation of any provision of the Consent Judgment despite the Defendants' best efforts to fulfill the obligation. "Best efforts" includes anticipating any potential force majeure event and addressing the effects of any such event (a) as it is occurring and (b) after it has occurred, to prevent or minimize any delay and environmental effect to the greatest extent possible.

37.    Notice of Force Majeure Events.  Defendants shall provide notice orally or by electronic or facsimile transmission as soon as possible, but not later than seventy-two (72) hours after the time any of the Defendants first knew of, or by the exercise of due diligence, should have known of, a claimed Force Majeure Event. The Defendants shall also provide written notice, as provided in Section XIII (Notices, Submittals and Demands) of this Consent Judgment, within seven (7) days of the time any of the Defendants first knew of, or by the exercise of due diligence, should have known of, the event. In this notice, the Defendants shall reference this Paragraph of this Consent Judgment and state the anticipated length of time that the delay or violation may persist, the cause or causes of the delay or violation, all measures taken or to be taken by the Defendants

17

to prevent or minimize the delay or violation, the schedule by which the Defendants propose to implement those measures, and the Defendants' rationale for attributing a delay or violation to a Force Majeure Event. The Defendants shall adopt all reasonable measures to avoid or minimize such delays or violations. The Defendants shall be deemed to know of any circumstance which the Defendants, their contractors, or any entity controlled by the Defendants knew or should have known.

38.   <u>Failure to Give Notice</u>.   Failure to provide such notice according to the preceding Paragraph shall preclude the Defendants' claim for Force Majeure.

39.   <u>The Plaintiff's Response</u>. If the United States agrees that a Force Majeure Event has occurred, the United States may agree to extend the time for the Defendants to perform the affected requirements for the time necessary to complete those obligations.  An extension of time to perform the obligations affected by a Force Majeure Event shall not, by itself, extend the time to perform any other obligation.  Where the United States agrees to an extension of time, the appropriate modification shall be made pursuant to Section XVIII (Modification) of this Consent Judgment.

40.   <u>Disagreement</u>. If the United States does not agree that a Force Majeure Event has occurred, or does not agree to the extension of time sought by the Defendants, the United States' position shall be binding, unless the Defendants invoke Dispute Resolution under Section X of this Consent Judgment.

41.   <u>Burden of Proof</u>.  In any such dispute, the Defendants bear the burden of proving, by a preponderance of the evidence, that each claimed Force Majeure Event is a Force Majeure Event, that the Defendants gave the notice required by Paragraph 37, that the Force Majeure Event

caused any delay the Defendants claim was attributable to that event, and that the Defendants exercised best efforts to prevent or minimize any delay caused by the event.

42.      <u>Events Excluded</u>.  "Force Majeure" does not include: (a) the Defendants' financial inability to perform any obligation under this Consent Judgment; or (b) unanticipated or increased costs or expenses associated with the performance of the Defendants' obligations under this Consent Judgment; or (c) the failure of any lessee, sublessee, or assignee under a lease or sublease, any entity controlled by any entity controlled by the lessee, sublessee, or assignee, or the lessee, sublessee, or assigneee's contractors, to perform any obligations required under this Consent Judgment or the Act.

43.      Notwithstanding any other provision of this Consent Judgment, this Court shall not draw any inferences or establish any presumptions adverse to either Party as a result of the Defendants serving a Force Majeure notice or the Parties' inability to reach an agreement.

44.      As part of the resolution of any matter submitted to this Court under Section X (Dispute Resolution) of this Consent Judgment regarding a claim of Force Majeure, the Parties by agreement, or this Court by order, may in appropriate circumstances extend or modify the schedule for completion of work under this Consent Judgment to account for the delay in the work that occurred as a result of any extension approved by the United States or the Court.  The Defendants shall be liable for stipulated penalties for their failure thereafter to complete the work in accordance with the extended or modified schedule.

## X.      DISPUTE RESOLUTION

45.      Unless otherwise expressly provided for in this Consent Judgment, the dispute resolution procedures of this Section shall be the exclusive mechanism to resolve disputes arising under or with respect to this Consent Judgment. The Defendants' failure to seek resolution of a dispute

under this Section shall preclude the Defendants from raising any such issue as a defense to an action by the United States to enforce any obligation of the Defendants arising under this Consent Judgment.

      a.     <u>Informal Dispute Resolution.</u>  Any dispute subject to Dispute Resolution under this Consent Judgment shall first be the subject of informal negotiations. The dispute shall be considered to have arisen when the Defendants send the United States a written Notice of Dispute. Such Notice of Dispute shall state clearly the matter in dispute. The period of informal negotiations shall not exceed thirty (30) days from the date the dispute arises, unless that period is modified by written agreement. If the Parties cannot resolve a dispute by informal negotiations, then the position advanced by the United States shall be considered binding unless, within forty-five (45) days after the conclusion of the informal negotiation period, the Defendants invoke formal dispute resolution procedures as set forth below.

      b.     <u>Formal Dispute Resolution</u>.  The Defendants shall invoke formal dispute resolution procedures, within the time period provided in the preceding subparagraph, by serving on the United States a written Statement of Position regarding the matter in dispute. The Statement of Position shall include, but may not necessarily be limited to, any factual data, analysis, or opinion supporting the Defendants' position and any supporting documentation relied upon by the Defendants.

      c.     The United States shall serve its Statement of Position within 45 days of receipt of the Defendants' Statement of Position. The United States' Statement of Position shall include, but may not necessarily be limited to, any factual data, analysis, or opinion supporting that position and any supporting documentation relied upon by the United States. The United States' Statement of Position shall be binding on the Defendants, unless the Defendants file a motion for

judicial review of the dispute in accordance with the following subparagraph.

d.      The Defendants may seek judicial review of the dispute by filing with the Court and serving on the United States, in accordance with Section XIII (Notices, Submittals and Demands) of this Consent Judgment, a motion requesting judicial resolution of the dispute. The motion must be filed within 30 days of receipt of the United States' Statement of Position pursuant to the preceding Paragraph. The motion shall contain a written statement of the Defendants' position on the matter in dispute, including any supporting factual data, analysis, opinion, or documentation, and shall set forth the relief requested and any schedule within which the dispute must be resolved for orderly implementation of the Consent Judgment.

e.      The United States shall respond to the Defendants' motion within the time period allowed by the Local Rules of this Court. The Defendants may file a reply memorandum, to the extent permitted by the Local Rules of this Court.

f.      Except as otherwise provided in this Consent Judgment, in any dispute brought under this Section pertaining to performance of a compliance or reporting obligation, and all other disputes that are accorded review on the administrative record under applicable principles of administrative law, the defendants shall have the burden of demonstrating, based on the administrative record, that the position of the United States is arbitrary and capricious or otherwise not in accordance with law.

g.      In any other dispute brought under this Section, the Defendants shall bear the burden of demonstrating that their position clearly complies with this Consent Judgment and the Act and its implementing regulations, and that the Defendants are entitled to relief under applicable law.

21

46.    The invocation of dispute resolution procedures under this Section shall not, by itself, extend, postpone, or affect in any way any obligation of the Defendants under this Consent Judgment, unless and until final resolution of the dispute so provides. Stipulated Penalties with respect to the disputed matter shall continue to accrue from the first day of noncompliance, but payment shall be stayed pending resolution of the dispute as provided in Section VIII (Stipulated Penalties) and in this Section of this Consent Judgment. If the Defendants do not prevail on the disputed issue, Stipulated Penalties shall be assessed and paid as provided in Section VIII (Stipulated Penalties).

47.    Where the nature of the dispute is such that a more timely resolution of the issues is required, the time periods set out in this Section may be shortened upon motion of one of the Parties.

48.    This Court shall not draw any inferences or establish any presumptions adverse to any Party as a result of invocation of this Section or the Parties' inability to reach an agreement.

49.    As part of the resolution of any dispute under this Section, in appropriate circumstances, the Parties may agree, or this Court may order, an extension or modification of the schedule for the completion of the activities required under this Consent Judgment to account for the delay that occurred as a result of a dispute resolution. The Defendants shall be liable for stipulated penalties for their failure thereafter to complete the work in accordance with the extended or modified schedule, provided that the Defendants shall not be precluded from asserting that a Force Majeure Event has caused or may cause a delay in complying with the extended or modified schedule.

## XI.    EFFECT OF SETTLEMENT/RESERVATION OF RIGHTS

50.    Resolution of the Plaintiff's Civil Claims.  This Consent Judgment resolves the claims of the United States against the Defendants which were alleged in the Complaint filed in this action through the Date of Lodging.

51.    Reopener.  The resolution of civil claims of the United States provided by this Subsection is subject to compliance with all requirements of this Consent Judgment.

52.    Upon entry of this Consent Judgment by the Court, EPA agrees that the requirements of EPA Administrative Order, Index No. CAA-02-2006-1033 ("AO") with respect to all subsequent obligations of the Defendants are superseded by the requirements of this Consent Judgment.  If this Consent Judgment is not entered by the Court, the AO shall remain in full force and effect.

53.    This Consent Judgment is not a permit, or a modification of any permit, under any federal, State, or local laws or regulations. The Defendants are responsible for achieving and maintaining complete compliance with all applicable federal, State, and local laws, regulations, and permits; and the Defendants' compliance with this Consent Judgment shall be no defense to any action commenced pursuant to any such laws, regulations, or permits.  The United States does not, by its consent to the entry of this Consent Judgment, warrant or aver in any manner that the Defendants' compliance with any aspect of this Consent Judgment will result in compliance with provisions of the Act, or with any other provisions of federal, State, or local laws, regulations, or permits.   This Consent Judgment does not relieve Defendants of any obligation to comply with other federal or state requirements under the Act.

54.    Defendants represent that they either own the Property, or have been provided, or will secure from the Property owner the necessary rights to allow them use of the Property.  This Consent Judgment does not address any current or future disputes concerning ownership of the

Property between Defendants and any third parties including but not limited to any current or future dispute with the Town of Huntington. Defendants specifically agree that they are bound and will continue to be bound by the obligations of this Consent Judgment notwithstanding any such disputes regarding the ownership of the Property. Defendants further agree to reimburse the United States for any costs it may incur in defending claims related to the Property and/or to Defendants' use of the Property to comply with this Consent Judgment.

55. This Consent Judgment does not apply to any claim(s) of alleged criminal liability.

56. Subject to Section VIII (Stipulated Penalties) of this Consent Decree, the United States reserves all legal and equitable remedies available to enforce the provisions of this Consent Judgment. This Consent Judgment shall not be construed to limit the rights of the United States to obtain penalties or injunctive relief under the Act or implementing regulations, or under other federal laws, regulations, or permit conditions. The United States further reserves all legal and equitable remedies to address any imminent and substantial endangerment to the public health or welfare or the environment arising at, or posed by, the Defendants' Facility, whether related to the violations addressed in this Consent Judgment or otherwise. In any subsequent administrative or judicial action initiated by the Plaintiff for injunctive relief or civil penalties relating to the Facility covered by this Consent Judgment, the Defendants shall not assert any defense or claim based upon principles of waiver, *res judicata*, collateral estoppel, issue preclusion, claim preclusion, or claim splitting, or any other defense based upon the contention that the claims raised by the Plaintiff in the subsequent proceeding were brought, or should have been brought, in the instant case; provided, however, that nothing in this Paragraph is intended to, or shall, affect the validity of Paragraph 50 of this Consent Judgment.

57.     Except as specifically provided by this Consent Judgment, nothing in this Consent Judgment shall relieve the Defendants of their obligation to comply with all applicable federal, state and local laws, rules and regulations.  Nothing contained in this Consent Judgment shall be construed to prevent or limit the rights of the Plaintiff to obtain penalties, injunctive relief or other relief under the Act or other federal, state or local laws, rules, regulations, or permits.

58.     Nothing in this Consent Judgment is intended to, or shall, alter or waive any applicable law.

59.     Each limit and/or requirement established by or under this Consent Judgment is a separate, independent requirement.

60.     This Consent Judgment does not limit or affect the rights of the Defendants or of the United States against any third parties, not party to this Consent Judgment, nor does it limit the rights of third parties, not party to this Consent Judgment, against the Defendants, except as otherwise provided by law.  This Consent Judgment shall not be construed to create rights in, or grant any cause of action to, any third party not a Party to this Consent Judgment.

## XII.   COSTS

61.     The Parties shall bear their own costs in this action, including attorneys' fees, except that the United States shall be entitled to collect the costs (including attorneys' fees) incurred in any action necessary to collect any portion of the Civil Penalty or any Stipulated Penalties due but not paid by the Defendants or to enforce other provisions of this Consent Judgment.

## XIII.   NOTICES, SUBMITTALS AND DEMANDS

62.     Unless otherwise provided herein, whenever, under the terms of this Consent Judgment, notice is required to be given or a report or other document is required to be sent, or a demand for stipulated penalties is made, it shall be directed in writing to the individuals at the addresses

specified below.  Any Party may change the person designated or address for written notice by
written notice to all the other designated recipients.

As to the United States:

David M. Eskew
Assistant U.S. Attorney
U.S. Attorney's Office
Eastern District of New York
271 Cadman Plaza West, 7th Floor
Brooklyn, New York 11201
(Re: USAO # 2006VO1356)

Kenneth Eng, Chief
Air Compliance Branch
Division of Enforcement & Compliance Assistance
U.S. Environmental Protection Agency, Region 2
290 Broadway, 21st Floor
New York, New York 10007-1866

Flaire Hope Mills, Chief
Air Branch
Office of Regional Counsel
U.S. Environmental Protection Agency, Region 2
290 Broadway, 16th Floor
New York, New York 10007-1866

As to the State:

Merlange Genece
New York State Department of Environmental Conservation
Region 1
SUNY Campus, Building 40
Stony Brook, New York 11790
axshah@gw.dec.state.ny.us

As to the Defendants:

Donald W. Stever, Esq.
B. David Naidu, Esq.
K & L Gates LLP
599 Lexington Avenue
New York, New York 10022-6030

Andrew E. Curto, Esq.

26

Forchelli, Curto, Deegan, Schwartz, Mineo, Cohn & Terrana, LLP.
THE OMNI
333 Earle Ovington Boulevard, Suite 1010
Uniondale, New York 11553

Chester Broman
110 Sand Company
170 Cabot Street
West Babylon, New York 11704

Leonard Joseph, Esq.
Dewey & LeBoeuf LLP
1301 Avenue of the Americas
New York, New York 10019-6092

Virgil Price
Broad Hollow Estates, Inc.
P.O. Box 650
Purchase, New York 10577-0650

63.    All notifications, communications or submissions made pursuant to this Section shall be sent either by:  (a) overnight mail or delivery service; (b) certified or registered mail, return receipt requested; or (c) electronic transmission, unless the recipient is not able to review the transmission in electronic form.  All notifications, communications and submissions (a) sent by overnight, certified or registered mail shall be deemed submitted on the date they are postmarked, or (b) sent by overnight delivery service shall be deemed submitted on the date they are delivered to the delivery service.  All notifications, communications or submissions made by electronic means shall be electronically signed, and shall be deemed submitted on the date that the Defendants receive written acknowledgment of receipt of such transmission.

64.    Any Party may change either the notice recipient or the address for providing notices to it by serving the other Parties with a notice setting forth such new notice recipient or address.

27

## XIV.   EMERGENCY RESPONSE

65.    Nothing in this Consent Judgment shall be deemed to limit any authority of the United States to (a) take all appropriate action to protect human health and the environment, (b) direct or order such action, or (c) seek an order from the Court to protect human health and the environment.

## XV.   EFFECTIVE DATE

66.    The Effective Date of this Consent Judgment shall be the date upon which this Consent Judgment is entered by the Court, or a motion to enter the Consent Judgment is granted, whichever occurs first, as recorded on the Court's docket.

## XVI.   RETENTION OF JURISDICTION

67.    The Court shall retain jurisdiction over this case until termination of this Consent Judgment, for the purpose of resolving disputes arising under this Consent Judgment or entering orders modifying this Consent Judgment, or effectuating or enforcing compliance with the terms of this Consent Judgment.

## XVII. APPENDICES

68.    The following Appendices are attached to and part of this Consent Judgment:

"Appendix A" is the New York State Facility Permit ID: 1-4726-00490/00011;

"Appendix B" is Property Survey Number 9052-DES-1111.

## XVIII. MODIFICATION

69.    The terms of this Consent Judgment may be modified only by a subsequent written agreement signed by the Parties.  Where the modification constitutes a material change to any term of this Consent Judgment, it shall be effective only upon approval by the Court.

## XIX. <u>TERMINATION</u>

70.     Defendants may serve upon the United States, no earlier than the (2) year anniversary of the Effective Date, a Request for Termination, which shall include a statement that Defendants have satisfactorily completed two years of compliance with their obligations under this Consent Judgment along with all necessary supporting documentation.  The Request for Termination shall include a reminder to EPA of the sixty (60) day deadline for EPA to act upon the Request for Termination in accordance with Paragraph 73.

71.     This Consent Judgment may terminate without the need for further judicial action, provided that the United States has first agreed in writing that Defendants have satisfactorily completed two years of compliance with the obligations required under this Consent Judgment, including but not limited to the compliance requirements under Section IV (Compliance Requirements), the reporting requirements under Section V (Reporting Requirements), the requirements under Section VI (Transfer), if applicable, and payment of the civil penalty under Section VII (Civil Penalty) and any outstanding Stipulated Penalties under Section VIII (Stipulated Penalties) of this Consent Judgment.

72.     The Parties shall confer informally concerning any disagreement that the Parties may have as to whether Defendants have been in compliance with the provisions of this Consent Judgment.  If the Parties are unable to resolve their disagreement through informal communication, then Defendants may seek to invoke Dispute Resolution under Section X (Dispute Resolution) and follow the procedures set forth therein.

73.     If the EPA fails to make a determination in writing as to termination within (60) days of receipt of the Request for Termination, Defendants may invoke Dispute Resolution under Section X (Dispute Resolution) of this Consent Judgment.

## XX.   PUBLIC PARTICIPATION

74.    This Consent Judgment shall be lodged with the Court for a period of not less than thirty (30) days for public notice and comment in accordance with 28 C.F.R. § 50.7.  The United States reserves the right to withdraw or withhold its consent if the comments regarding the Consent Judgment disclose facts or considerations indicating that the Consent Judgment is inappropriate, improper, or inadequate.  The Defendants consent to entry of this Consent Judgment without further notice.

## XXI.   SIGNATORIES AND SERVICE

75.    Each undersigned representative of the Parties certifies that he or she is fully authorized to enter into the terms and conditions of this Consent Judgment and to execute and legally bind to this document the Party he or she represents.

76.    This Consent Judgment may be signed in counterparts, and such counterpart signature pages shall be given full force and effect.

77.    Each Party hereby agrees to accept service of process by mail with respect to all matters arising under or relating to this Consent Judgment and to waive the formal service requirements set forth in Rule 4 of the Federal Rules of Civil Procedure and any applicable Local Rules of this Court including, but not limited to, service of summons.

## XXII.  INTEGRATION

78.    This Consent Judgment and its Appendices constitute the final, complete, and exclusive agreement and understanding among the Parties with respect to the settlement embodied in the Consent Judgment and supersede all prior agreements and understandings, whether oral or written, concerning the settlement embodied herein.  No other document, nor any representation, inducement, agreement, understanding, or promise, constitutes any part of this Consent

Judgment or the settlement it represents, nor shall it be used in construing the terms of this Consent Judgment.

## XXIII. <u>FINAL JUDGMENT</u>

79.     Upon approval and entry of this Consent Judgment by the Court, this Consent Judgment shall constitute a final judgment in the above-captioned matter between the Plaintiff and the Defendants.

SO ORDERED, THIS _____ DAY OF _____, 2012

_____
UNITED STATES DISTRICT COURT JUDGE

The Parties, by their undersigned representatives, enter into this Consent Judgment in United States v. 110 Sand Company, Chester Broman and Broad Hollow Estates, Inc.

FOR THE UNITED STATES OF AMERICA:

Date: 3-6-2012

ELLEN N. MAHAN
Deputy Section Chief
Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice
Washington, D.C. 20044-7611

LORETTA E. LYNCH
United States Attorney
Eastern District of New York
271 Cadman Plaza West, 8th Fl.
Brooklyn, New York 11201

Date: 3/7/2012        By:

DAVID M. ESKEW (DE 9120)
Assistant U.S. Attorney
(718) 254-6194

32

The Parties, by their undersigned representatives, enter into this Consent Judgment in United States v. 110 Sand Company, Chester Broman and Broad Hollow Estates, Inc.

FOR U.S. ENVIRONMENTAL PROTECTION AGENCY:

Date: 2/27/12

ERIC SCHAAF
Regional Counsel
U.S. Environmental Protection Agency, Region 2
Flaire Mills
Lilliana Villatora
     Of Counsel

The Parties, by their undersigned representatives, enter into this Consent Judgment in United States v. 110 Sand Company Broman and Broad Hollow Estates, Inc.

FOR 110 SAND COMPANY, C.BROMAN TRANSPORTATION CORP. AND FARMINGDALE SAND CORP.

Date: _12-20-11_____          _Chester Broman_____
                                 CHESTER BROMAN
                                 110 Sand Company
                                 170 Cabot Street
                                 West Babylon, New York 11704

Date: _12-22-11_____         K & L Gates LLP
                                 599 Lexington Avenue
                                 New York, New York 10022-6030

                          By: _____
                                 DONALD W. STEVER, ESQ.
                                 B. DAVID NAIDU, ESQ.

                                 *Attorneys for 110 Sand Company, C. Broman*
                                 *Transportation Corp., Farmingdale Sand Corp.,*
                                 *and Broad Hollow Estates, Inc.*

                                 Forchelli, Curto, Deegan, Schwartz, Mineo,
                                 Cohn & Terrana, LLP
                                 THE OMNI
                                 333 Earle Ovington Boulevard, Suite 1010
                                 Uniondale, New York 11553

Date: _____      By: _____
                                 ANDREW CURTO, ESQ.

                                 *Attorneys for 110 Sand Company, C. Broman*
                                 *Transportation Corp., and Farmingdale Sand Corp.*

The Parties, by their undersigned representatives, enter into this Consent Judgment in
United States v. 110 Sand Company Broman and Broad Hollow Estates, Inc.

FOR 110 SAND COMPANY, C.BROMAN TRANSPORTATION CORP. AND
FARMINGDALE SAND CORP.


Date: _____         _____
                                      CHESTER BROMAN
                                      110 Sand Company
                                      170 Cabot Street
                                      West Babylon, New York 11704


Date: _____           K & L Gates LLP
                                      599 Lexington Avenue
                                      New York, New York 10022-6030

                          By:         _____
                                      DONALD W. STEVER, ESQ.
                                      B. DAVID NAIDU, ESQ.

                                      *Attorneys for 110 Sand Company, C. Broman*
                                      *Transportation Corp., Farmingdale Sand Corp.,*
                                      *and Broad Hollow Estates, Inc.*




                                      Forchelli, Curto, Deegan, Schwartz, Mineo,
                                      Cohn & Terrana, LLP
                                      THE OMNI
                                      333 Earle Ovington Boulevard, Suite 1010
                                      Uniondale, New York 11553

Date:  12/19/11           By:         _____
                                      ANDREW CURTO, ESQ.

                                      *Attorneys for 110 Sand Company, C. Broman*
                                      *Transportation Corp., and Farmingdale Sand Corp.*


34

The Parties, by their undersigned representatives, enter into this Consent Judgment in <u>United States v. 110 Sand Company, Chester Broman and Broad Hollow Estates, Inc.</u>

FOR BROAD HOLLOW ESTATES, INC.:

Date: _December 20, 2011_

VIRGIL M. PRICE
Broad Hollow Estates, Inc.
P.O. Box 650
Purchase, New York 10577-0650

Date: _12 - 22 - 11_

K & L Gates LLP
599 Lexington Avenue
New York, New York 10022-6030

By: _____

DONALD W. STEVER, ESQ.
B. DAVID NAIDU, ESQ.

*Attorneys for 110 Sand Company, C. Broman Transportation Corp., Farmingdale Sand Corp., and Broad Hollow Estates, Inc.*

35